**KAZEROUNI LAW GROUP, APC**
David McGlothlin, Esq. (253265)
david@kazlg.com
Pamela Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel on Signature Page]

*Attorneys for Plaintiff,*
Dale Jones

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DALE JONES,**<br><br>        **Plaintiff,**<br><br>    v.<br><br>**GOODLEAP, LLC; CALIFORNIA EFFICIENCY GROUP, INC.; AND HARTMAN HOME TRANSFORMATIONS LLC,**<br><br>        **Defendants.** | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>1. **TRUTH IN LENDING ACT, 15 U.S.C. §§ 1601,** *et seq.***;**<br>2. **THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, Cal. Civ. Code §§ 1788,** *et seq.***;**<br>3. **HOME SOLICITATION SALES ACT, Cal. Civ. Code §§ 1689.5,** *et seq.***;**<br>4. **CALIFORNIA'S UNFAIR COMPETITION LAW, Business and Professions Code § 17200,** *et seq.***; and,**<br>5. **CALIFORNIA'S ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT, Cal. Welfare Institutions Code §§ 15600,** *et seq.***;**<br>6. **THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT ("CCCRAA"), Cal. Civ. Code § 1785.1, et** *seq.***; and,**<br>7. **CALIFORNIA PENAL CODE § 632.** |

## INTRODUCTION

1.    Plaintiff DALE JONES ("Plaintiff" or "Mr. Jones") brings this action for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendants GOODLEAP, LLC ("GOODLEAP"); CALIFORNIA EFFICIENCY GROUP, INC. ("CEG"); and HARTMAN HOME TRANSFORMATIONS LLC ("HHT") (collectively, "Defendants") regarding Defendants' predatory, unfair and unlawful debt collection and business practices.

2.    As alleged herein, upon information and belief, Defendants and/or their agents intentionally prey upon the elderly citizens of our community (like Mr. Jones) through targeted and unscrupulous door-to-door home improvement sales designed to specifically seek out the vulnerable elderly population.

3.    Indeed, the Los Angeles District Attorneys' office warns consumers that:

> Older adults should be cautious of salespeople or contractors who show up at their door to solicit business. Criminals know that older adults may be retired and home during the day and target them. The scams can take many forms. It could be an unsolicited contractor or repair person arriving at your door asking to check your heater, roof or air conditioner for free. It could be contractors who claim they just repaired a neighbor's home, have leftover supplies and can do the same work at your residence for cheap.[1]

4.    The Los Angeles District Attorneys' office further notes that "[o]ne in five older adults has been the victim of financial fraud. Con artists use a variety of ways to get the hard-earned savings of older adults."[2]

5.    Because Defendants know that Plaintiff, and elderly individuals like him, lack sophistication with electronic devices, they fraudulently induced Plaintiff

---

[1] *Door-to-Door Sales and Home Repair Fraud,* https://da.lacounty.gov/seniors/financial-fraud/home-repair-fraud#:~:text=Criminals%20know%20that%20older%20adults,or%20air%20conditioner%20for%20free (last visited March 25, 2024).

[2] *Financial Fraud,* https://da.lacounty.gov/seniors/financial-fraud (last visited March 25, 2024).

to "execute" a digital contact (which is unenforceable as explained herein), despite the fact that Plaintiff has no email, nor any other digital contact information by which Plaintiff could have reviewed the "contract" or could have received the "contract" once executed.

6.     Then, when Defendants' unfair business practices were uncovered by Plaintiff's son, and a notice of cancellation of contract was timely provided, Defendants simply ignored that valid recission, and continued on to harass, torment, and wrongfully collect a void debt against Plaintiff resulting in emotional distress and financial harm.

7.     As a result, Defendants' actions described herein are in direct violation of: (1) the Truth In Lending Act, 15 U.S.C. §§ 1601, *et seq*. ("TILA"); (2) the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, *et seq*. ("RFDCPA"); (3) the Home Solicitation Sales Act, Cal. Civ. Code §§ 1689.5, *et seq*. ("HAS"); (4) California's Unfair Competition Law, Business And Professions Code § 17200, *et seq*. ("UCL"); and, (5) California's Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welfare And Institutions Code §§ 15600, *et seq*. ("EADACPA").

8.     Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge. The facts alleged herein come from Plaintiff's personal knowledge, Plaintiff's research, and Plaintiff's counsel's investigation and research, taking into account that Defendants likely intentionally obscure and conceal their actions to hide their unfair and unlawful business practices.

9.     Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

10.     Any violations by Defendants were knowing, willful, and intentional, and

Defendants did not maintain procedures reasonably adapted to avoid any such specific violation.

## PARTIES

11.   Plaintiff is a "senior citizen" as defined by Cal. Civ. Code § 1761 and an "elder" as defined by the Welf. & Inst. Code § 15610.27 residing within the County of Los Angeles, State of California.

12.   Plaintiff is also a "person" as defined by Cal. Civ. Code § 1785.3(j), and Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

13.   Plaintiff is a "person" as defined by Cal. Civ. Code § 1788.2(g) from whom a debt collector sought to collect a consumer debt, which was due and owing or alleged to be due and owing from Plaintiff. As a result, Plaintiff is a "debtor," as that term is defined by Cal. Civ. Code § 1788.2(h). The alleged debt at issue was the result of a "consumer credit transaction" as defined by Cal. Civ. Code § 1788.2(e) in which property, services, or money was allegedly acquired on credit primarily for personal, family, or household purposes.

14.   This case involves Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(c) and 15 U.S.C. § 1681a(d)(1) in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information to and by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

15.   Upon information and belief, Defendant GOODLEAP is a California Limited Liability Company, with its principal place of business located at 8781 Sierra College Blvd., Roseville, California 95661. According to its website, GOODLEAP "is a technology company delivering best-in-class financing and software products for sustainable solutions, from solar panels and batteries to energy-efficient HVAC, heat

pumps, roofing, windows, and more."[3] Upon information and belief, GOODLEAP is a "debt collector" as that phrase is defined by Cal. Civ. Code § 1788.2(c) as Defendant in the ordinary course of business, regularly, on behalf of that itself or others, engages in debt collection.

16.     Upon information and belief, Defendant GOODLEAP is a "person" as defined by Cal. Civ. Code § 1785.3(j).

17.     Upon information and belief, Defendant CEG is a California Corporation with its principal place of business located at: 917 W 17th St., Los Angeles, California 90015. CEG is a "privately-held and family operated solar installer,"[4] offering cosmetic home improvement services such as tankless water heaters, reverse osmosis, water conditioning, plumbing, and water sense fixtures.[5]

18.     Upon information and belief, Defendant HHT is a California Limited Liability Company with its principal place of business located at: 11260 Donner Pass Road, Ste C1-1036, Truckee, California 96161. HHT is a home improvement company that offers financing for residential home improvement projects.[6]

## VENUE AND JURISDICTION

19.     This action arises out of violations of federal law. Federal question jurisdiction of this Court arises pursuant to 15 U.S.C. §§ 1601, *et seq*. (TILA cause of action); and 28 U.S.C. § 1367 for the supplemental state claim under the RFDCPA, HAS, UCL, and EADACPA, which are related to claims in the action within such original jurisdiction and form part of the same case or controversy under Article III of the United States Constitution.

20.     The violations alleged herein against Plaintiff, at all relevant times herein, occurred in the county of Los Angeles, State of California, where Plaintiff resides and within this District.

---

[3] https://goodleap.com/about-us/ (last visited March 25, 2024).

[4] https://californiaefficiencygroup.com/about-us/ (last visited March 25, 2024).

[5] https://californiaefficiencygroup.com/ (last visited March 25, 2024).

[6] https://hartmanhometransformations.com/home-remodeling-contractor-sacramento-ca/ (last visited March 25, 2024).

21.     Because Defendants conduct substantial business within the State of California (including the County of Los Angeles), personal jurisdiction is established, and Defendant CEG is headquartered in the County of Los Angeles and within this District.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, Plaintiff resides in this judicial district, Defendants transact business here, and because CEG is headquartered here.

## FACTUAL ALLEGATIONS

23.     Mr. Jones, a ninety-four-year-old homeowner with a distinguished credit score of 828 as reported by Equifax, was preyed upon by Defendants while in the comfort of his own home.

24.     On or about July 14, 2023, a man believed to be a representative and agent of Defendants, Kyle Townsend ("Mr. Townsend"), knocked on Mr. Jones's door unannounced.

25.     When Mr. Jones opened the door, Mr. Townsend represented to Mr. Jones that he was there to test the water quality in Mr. Jones' home and insisted on testing the water in Mr. Jones' kitchen.

26.     Mr. Townsend performed some "tests" and then frightened Mr. Jones into believing the water in his home was unsafe to consume.

27.     Mr. Jones, an elderly man who was vulnerable to this obvious scam, was led to believe by Mr. Townsend that there was something hazardous in his water.

28.     Based on these representations, Mr. Townsend then convinced Mr. Jones he needed to buy a *15-year supply* of various items, such as shampoo, conditioner, dish soap, cleaning supplies, and drinking water.

29.     Mr. Townsend presented Mr. Jones with a bogus cost-savings analysis falsely representing that Mr. Jones would obtain a $100 Net Profit if he financed and installed a Reverse Osmosis Alkaline System ("RO System"), which according to Defendants was required to cure the health issues with Mr. Jones' water.

30.     Recognizing that Mr. Jones was elderly and out of the supervision of his family, Mr. Townsend then told Mr. Jones that in order to treat the rest of the tainted water in Mr. Jones' home, Mr. Townsend needed to install a Whole Home Treatment System.  Mr. Townsend further represented that Mr. Jones would "save money" by also installing a tankless water heater.

31.     Mr. Townsend even went as far to represent to Mr. Jones that these installations would increase the property value of Mr. Jones' home.

32.     Upon information and belief, Mr. Townsend intentionally took advantage of Mr. Jones' vulnerability and fraudulently induced Mr. Jones to comply with the installation of the RO System, along with the additional work.

33.     Upon information and belief, Defendants work in concert to find vulnerable consumers and entice them (based on misrepresentations) into high interest consumer loans for home improvement services at inflated rates.

34.     Plaintiff further alleges upon information and belief, that Defendants intentionally hold themselves out as members of the city to scare vulnerable consumers, like Mr. Jones, into permitting these sham inspections only to then pressure consumers into buying bogus products.

35.     For instance, one consumer posted a strikingly similar interaction to ScamPulse.com explaining that:

> Young guy came to the door acting as he was part of the city's efforts to help with our harsh water. They immediately started installing a system that my grandmother felt forced to get after [making] holes and other damage the house then she was procured into electronic signatures. My grandmother has borderline Dementia and is 87 seeking legal aid. Please don't trust this company in your home. They start off very nice men then ghost you . . .[7]

36.     Another consumer posted that:

---

[7] https://www.scampulse.com/california-efficiency-group-reviews#i16500661 (last visited March 25, 2024).

KAZEROUNI
LAW GROUP, APC

> The scammer said they were installing water purification systems nearby to combat recent high levels of chemicals discovered by the city, as if a public city service was being rendered. He said he needed to come in and test our kitchen water. A quick google search suggested this was a scam, so I didn't let him inside. He wore a bright yellow shirt and vest, as if he was a utility worker. It's clear this is a door-to-door operation to sell water purification systems or maybe to just collect personal ID information.[8]

37.     Upon information and belief, Defendants then submitted a credit application for Mr. Jones, which was approved on July 17, 2023.

38.     GOODLEAP also improperly ran Mr. Jones' credit report on or about July 14, 2023 in order to obtain information for additional products to be sold to Mr. Jones now that Defendants had set their sights on a vulnerable consumer.

39.     Then, on or about July 18, 2023, Defendants returned to Mr. Jones' home to dupe him into even more sham home improvement services with HHT acting as the "contractor" for such services, GOODLEAP as the lender, and CEG generating the leads through predatory door-to-door sales.

40.     Specifically, on July 18, 2023, Mr. Jones was coerced into electronically signing a purported contract with HHT and GOODLEAP for a consumer loan for $37,000 over a 15-year term, with a 6.99% APR, despite the fact that Mr. Jones *does not have an email address to be able to access copies of these contracts* and is not tech savvy or of sound mind such that he could meaningfully read these contracts or understand them prior to signing. Mr. Jones was also fraudulently induced into signing these contracts believing that there was something hazardous about the water in his home.

41.     Both of the purported contracts with HHT and GOODLEAP included a right to cancel the contracts without any penalty or obligation.

42.     The HHT included the right to cancel the contract within 5 business days

---

[8] *Id.*

for senior citizens such as Plaintiff. However, GOODLEAP's purported contract failed to notify Plaintiff of his ability to cancel within 5 business days, and instead included a blanket requirement that he was required to cancel within 3 business days, which is in violation of California law.

43.    Despite the clear statutory right for Plaintiff to cancel **both** contracts within 5 business days, Defendants failed to honor Plaintiff's right to cancel under California law, and instead, upon information and belief, engaged in a deliberately complex and predatory approach to prevent Plaintiff from exercising his rights.

44.    Upon information and belief, Defendants have a clear policy and practice of performing the work under these sham contracts immediately so that the consumer cannot exercise their statutory right to cancel the contracts.

45.    Between July 14, 2023 and July 19, 2023, Defendants, through CEG, performed the work for installing the R.O. system, water softener and a tankless water system, and re-piped the waste lines in Mr. Jones's two-bathroom house. The clear implication by this shot gun installation was that Defendants intended to overcome Plaintiff's five-business-day right to cancel by immediately doing the work after fraudulently inducing Mr. Jones to enter into contract.

46.    On July 19, 2023, Plaintiff's son, Vaughn Jones ("Vaughn"), arrived at Mr. Jones' house to visit. Vaughn was completely shocked to see the activity going on at his father's house and wanted to know what was going on as Vaughn knew his 94-year-old father was not of the mental capacity to be authorizing such extensive home improvements.

47.    Vaughn was also granted the authority to make financial decisions for his father, Mr. Jones.

48.    Vaughn immediately reached out to Defendants for more information and was furious to find out about all the services Defendants duped Mr. Jones into.

49.    Even more troubling, Defendants, forwarded Vaughn an audio recording of Mr. Jones, that was taken without Mr. Jones' knowledge or consent.

50.    On July 24, 2023, Plaintiff Dale Jones formally gave his son Vaughn

power of attorney to act on his behalf regarding many matters, including this one.

51.     Under this power of attorney authority, Vaughn sent notice of cancellation of contract in writing to Defendants on July 25, 2023–the fifth business day after Plaintiff entered into the subject contracts.

52.     Defendants refused to honor the timely notice of cancellation.

53.     Later, in a sequence of events that highlight the nefariousness of the Defendants' practices, on August 7, 2023, Vaughn sent a second Notice of Cancellation and a copy of the Durable Power of Attorney.

54.     Vaughn also offered to return the R.O. system, water softener and tankless water system to Defendants. However, Defendants refused to accept these items.

55.     In this August 7, 2023 communication, Vaughn also altered Defendants that Mr. Jones had still not received a copy of the purported contracts.

56.     Then, on September 4, 2023, Mr. Jones issued a third Notice of Cancellation to Defendants.

57.     At the time of the September notice of cancellation, Mr. Jones still had not received a copy of the contract as Mr. Jones does not have an email address and Defendants failed to provide any physical copies of the contract documents despite repeated requests.

58.     Despite Mr. Jones' timely cancellation of any and all contracts with Defendants, Defendants continue to the present day to hold Mr. Jones liable for a debt that is not authorized by law or by contract, and was the result of a calculated fraudulent inducement.

59.     To make matters worse, starting on or around November of 2023, GOODLEAP persisted with the collection of monthly payments, accumulating daily interests, and proceeding with threats of credit impact and potential legal action should the loan not be brought current.

60.     Indeed, GOODLEAP sent Plaintiff a letter dated November 6, 2023, in an attempt to collect the alleged debt and noting that Plaintiff was $1,027.24 past due

on the loan.

61.    GOODLEAP sent Plaintiff another letter dated November 11, 2023 indicating that the debt was accruing interest and to contact GOODLEAP.  This letter also stated, "Possible legal action may be taken if your loan is not brought current in the next 30 days."

62.    On January 26, 2024, GOODLEAP sent Plaintiff a third debt collection letter again threatening legal action, stating "Possible legal action may be taken if there are not steps taken to resolve your delinquency within ten (10) days of receipt of this notification."

63.    GOODLEAP is also reporting the alleged debt to Plaintiff's credit reports as being 120 Days Past Due; and having a balance of $38,405, despite the fact that Plaintiff timely cancelled his contract with GOODLEAP and offered to return the home improvement items to Defendants.

64.    By intentionally reporting inaccurate information (after Plaintiff properly rescinded the contracts), GOODLEAP acted in conscious disregard for Plaintiff's rights.

65.    This pattern of behavior represents a systematic attempt to obscure the process, leverage the complexity of the multiple contracts, and exploit an older adult's trust, culminating in various wrongful acts in violation of both state and federal law.

66.    As a direct and proximate result of Defendants' willful and illegal actions, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional pain and anguish, and humiliation and embarrassment. Plaintiff's injuries are concrete. GOODLEAP's conduct of reporting inaccurate and derogatory information is analogous to the common law tort of defamation.

67.    Furthermore, the Legislature enacted the CCCRAA to protect consumers from precisely the conduct described in this Complaint. The banking system is dependent upon fair and accurate credit reporting; and inaccurate credit reports directly

impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

68.   Consequently, the CCCRAA was enacted to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy; and to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

69.   The alleged transgressions by Defendants would, if left unchecked in a competitive marketplace, naturally propagate had the Legislature not created laws to give vulnerable consumers a voice and a mechanism for private enforcement.

**CAUSES OF ACTION**
**<u>FIRST CAUSE OF ACTION</u>**
**VIOLATIONS OF THE TRUTH IN LENDING ACT [TILA]**
**15 U.S.C. §§ 1601, *et seq.***
**[Against GOODLEAP]**

70.   Plaintiff here incorporates by reference the preceding paragraphs.

71.   The Truth in Lending Act ("TILA") was created to protect consumers from inaccurate and unfair credit billing and credit card practices, by requiring, among other things, that lenders to provide consumers with information relating to their loans.

72.   The debt at issue in this Complaint is a consumer credit transaction within the meaning of the TILA. *See* 15 USC § 1602.

73.   TILA requires a creditor, among other things, to:

> provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed. The statement shall include spaces for a "yes" and "no" indication to be initialed by the consumer to indicate whether the consumer wants a written itemization of the amount financed. Upon receiving an affirmative indication, the creditor shall provide, at the time other disclosures are

required to be furnished, a written itemization of the amount financed (15 U.S.C. § 1638(b)).

74.     Such disclosures must include: (1) the identity of the creditor; and (2) the amount financed. 15 U.S.C. § 1638(a); *see also*, 15 U.S.C. §§ 1631, 1632.

75.     TILA's implementing regulations, specifically 12 C.F.R. § 226.17(c)(1), further require these disclosures to "reflect the terms of the legal obligation between the parties" before "a consumer becomes contractually obligated on a credit transaction." *See* 12 C.F.R. § 226.2(a)(13) (defining "consummation" to mean "the time that a consumer becomes contractually obligated on a credit transaction").

76.     GOODLEAP failed to provide Plaintiff with a copy of the purported lending contract in violation of the requirements of TILA and its implementing regulations.

77.      As a result, of GOODLEAP's failure to make the required disclosures to Plaintiff, he was denied the requisite information, including the ability to understand the cost of the credit and to compare terms, which is precisely the sort of informed use of credit that TILA aims to foster.

78.     As a result of the violations herein, is entitled to actual damages, costs and attorney's fees. 15 USC § 1640.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT [RFDCPA]**
**Cal. Civ. Code §§ 1788, *et seq.***
**[Against GOODLEAP]**

79.     Plaintiff here incorporates by reference the preceding paragraphs.

80.     The foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA.

81.     All violations alleged regarding the RFDCPA are material violations as these violations would limit the ability of a hypothetical least sophisticated debtor to make an intelligent choice as to the alleged debt, determine whether the debt was owed, and to actions that should be taken to resolve the alleged debt.

82.     Any violations of the RFDCPA by GOODLEAP were knowing, willful, and intentional, and GOODLEAP did not maintain procedures reasonably adapted to avoid any such specific violation.

83.     The RFDCPA was enacted in 1976 to protect consumers from the oppressive and over-reaching debt collection practices of creditors and professional debt collectors. *See* Cal. Civil Code § 1788.1(b). The Legislature found that "unfair or deceptive debt collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers." Cal. Civil Code § 1788.1(a)(2). The RFDCPA, as originally passed, set forth a list of proscribed collection practices. Then, in 1999, the Legislature expanded creditor liability even further, by incorporating violations of the federal Fair Debt Collection Practices Act as violations of the Rosenthal Act. Cal. Civil Code § 1788.17. The effect of this amendment was to subject creditors such as GOODLEAP to the prohibitions of federal law, from which they had previously been exempted.

84.     GOODLEAP at all times relevant herein was a "debt collector" within the meaning of Cal. Civil Code § 1788.2(d), in that it regularly and in the ordinary course of business, on behalf of itself or others, engaged in acts and practices in connection with the collection of consumer debt.

85.     Plaintiff is a "debtor" within the meaning of Cal. Civil Code § 1788.2(h) in that he is a natural person from whom GOODLEAP sought to collect a consumer debt alleged to be due and owing.

86.     The purported debt which GOODLEAP attempted to collect from Plaintiff is a "consumer debt" within the meaning of Cal. Civil Code § 1788.2(f).

87.     California Civil Code § 1788.17 provides in pertinent part that, "…every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."

88.     By collecting or attempting to collect on a debt not owed, or authorized by contract or law, GOODLEAP committed multiple violations of the RFDCPA, as alleged herein.

89.     GOODLEAP violated the provisions of Cal. Civil Code § 1788.17 by using false, deceptive, or misleading misrepresentations or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e.

90.     As alleged herein, GOODLEAP also collected, and sought to collect, an alleged consumer debt from Plaintiff despite GOODLEAP's false representations concerning the legal status of the alleged debt (as Plaintiff had properly cancelled his contracts Plaintiff does not owe the alleged debt).

91.     GOODLEAP is also in violation of the RFDCPA by threatening legal action against Plaintiff, without intending to follow through, in an effort to scare Plaintiff into paying this illegal debt.

92.     As a result, GOODLEAP is in violation of 15 U.S. Code § 1692e(2), which is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17.

93.     Additionally, GOODLEAP has also violated 15 U.S.C. § 1692f including subsection (1) (which is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17) by engaging in unfair or unconscionable means to collect or attempt to collect the alleged debt and attempting to collect an amount not authorized by agreement or permitted by law.

94.     GOODLEAP's conduct also constitutes false, deceptive, misleading means to collect a debt and in violation of 15 U.S.C. §§1692e(10). Because Cal. Civ. Code 1788.17 incorporates the FDCPA, for the above reasons, GOODLEAP violated the RFDCPA.

95.     As a proximate result of GOODLEAP's violations herein, Plaintiff has been damaged in amounts which are subject to proof and has suffered severe emotional and financial harm.

96.     As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c).

### THIRD CAUSE OF ACTION
**VIOLATIONS OF THE HOME SOLICITATION SALES ACT [HSLA]**
**Cal. Civ. Code §§ 1689.5, *et seq.***
**[Against all Defendants]**

97.     Plaintiff here incorporates by reference the preceding paragraphs.

98.     Under Cal. Civ. Code § 1689.6(a) "a buyer has the right to cancel a home solicitation contract or offer until midnight of the third business day, or until midnight of the fifth business day if the buyer is a senior citizen, after the day on which the buyer signs an agreement or offer."

99.     Further, until the "buyer has the right to cancel a home solicitation contract or offer . . .  until the buyer receives a signed and dated copy of a service and repair contract." *Id*. "Cancellation occurs when the buyer gives written notice of cancellation." Cal. Civ. Code § 1689.6(d).

100.    "Notice of cancellation given by the buyer need not take the particular form as provided with the contract or offer to purchase and, however expressed, is effective if it indicates the intention of the buyer not to be bound by the home solicitation contract or offer." Cal. Civ. Code § 1689.6(f).

101.    "[W]ithin 10 days after a home solicitation contract or offer has been canceled, the seller must tender to the buyer any payments made by the buyer and any note or other evidence of indebtedness." Cal. Civ. Code § 1689.10.

102.    '[W]ithin 20 days after a home solicitation contract or offer has been canceled, the buyer, upon demand, must tender to the seller any goods delivered by the seller pursuant to the sale or offer, but he is not obligated to tender at any place other than his own address. If the seller fails to demand possession of goods within 20 days

after cancellation, the goods become the property of the buyer without obligation to pay for them." Cal. Civ. Code § 1689.11.

103.   Defendants' intentionally denied Plaintiff's statutory right to rescind the contract and failed to forgive the outstanding debt as required by law.

104.   Defendants also failed to demand possession of goods within 20 days after cancellation, despite an express offer by Plaintiff to return the items. As a result, any work, materials, and installations performed by Defendants (including the R.O. system, water softener tankless water system, and re-piped waste lines) are the property of Plaintiff without any further obligation for Plaintiff to pay Defendants.

105.   Defendants were fully aware or recklessly disregarded the fact that they were misrepresenting and/or concealing Plaintiff's rights to cancel the contracts within five business days, as guaranteed under California Civil Code § 1689.6.

106.   Defendants conducted the contractual transactions with the intent that Plaintiff would rely upon their false representations, and by completing the installation works so rapidly, they maliciously intended to impede his statutory right to rescind.

107.   As a direct consequence of Defendants' actions Plaintiff was caused substantial harm, including but not limited to financial loss, impact to his credit score, breach of his statutory rights, emotional distress, and exposure to aggressive and unlawful debt collection practices.

108.   Defendants' misrepresentations and willful disregard for Plaintiff's statutory rights to rescission were a substantial factor in causing his harm, as evidenced by Defendants' acts of completing installation swiftly to obstruct rescission and their continuous efforts to enforce the contract and collect payments against Plaintiff's expressed cancellation attempts.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW [UCL]**
**CAL. BUS. & PROF. CODE §§ 17200, _et seq._**
**[Against All Defendants]**

109.   Plaintiff here incorporates by reference the preceding paragraphs.

110.   The UCL defines "unfair competition" to include any "unlawful, unfair

or fraudulent" business act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

111.    The UCL imposes strict liability. Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

112.    Plaintiff and Defendant are each "person(s)" as that term is defined by Cal. Bus. & Prof. Code § 17201. Cal. Bus & Prof. Code § 17204 authorizes a private right of action on both an individual and representative basis.

113.    Cal. Bus. & Prof. C. § 17204, a provision of the Unfair Competition Law (§§ 17200–17209), confers standing to prosecute actions for relief not only on the public officials named therein but on private individuals, i.e., "any person acting for the interests of itself, its members or the general public." Thus, private plaintiffs who have suffered a financial injury may sue to obtain relief for others.

### *"Unfair" Prong*

114.    A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims.

115.    Defendants committed acts of unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200, *et seq*., as described herein including by, at a minimum: (1) attempting to collect a debt not owed or authorized by law or contract; (2) denying Plaintiff the ability to cancel his contracts as required by law; (3) coercing Plaintiff into entering into contracts for sham home improvements under the guise that the water in Plaintiff's home was hazardous; and (4) intentionally preying upon elderly individuals such as Plaintiff through target door-to-door sales.

116.    Defendants could and should have furthered their legitimate business

interests by not engaging in the complained of conduct herein. As a result, Defendant's actions are "unfair."

117. The harm to Plaintiff grossly outweighs the utility of Defendants' practices as there is simply no utility to the practices of Defendant in engaging in predatory home solicitation contracting.

118. Plaintiff could not have avoided the injury suffered. Indeed, had Defendants properly honored Plaintiff's ability to cancel the contracts, Defendants could have avoided many of the violations herein.

119. Plaintiffs reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

### *"Unlawful" Prong*

120. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

121. Defendant's acts and practices alleged above constitute unlawful business acts or practices as Defendants have violated, at a minimum, the Home Solicitation Sales Act, Cal. Civ. Code §§ 1689.5, *et seq.*; California's Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welfare Institutions Code §§ 15600, *et seq.*; and California Penal Code § 632.

122. GOODLEAP is also in violation of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*; the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, *et seq.*; and the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785.1, *et seq.*

123. These acts and practices alleged were intended to or did result in violations of the above-mentioned statutes.

124. Defendants have and will continue to unlawfully engaged in these unlawful practices unless enjoined.

125. Plaintiff continues to be bound by Defendants' illegal contracts and will

continue to be held liable for a debt that is not authorized by law unless Defendants are enjoined.

126.   Plaintiff seeks via the powers granted to Plaintiff pursuant to Cal. Bus. Prof. Code § 17204 to act a Private Attorney General and seek public injunctive relief to benefit the general public directly by bringing an end to Defendants' unfair business practices, which threaten future injury to the general public.

127.   Additionally, Plaintiff seeks this Court grant an injunction requiring Defendants to immediately cease Defendants from engaging in predatory home solicitation contracts. Such an injunction would benefit the public at large because the public could then not be subjected to Defendant's predatory practices.

128.   Plaintiff also seeks restitution as afforded by Cal. Bus. Prof. Code § 17203.

<u>**FIFTH CAUSE OF ACTION**</u>
**CALIFORNIA'S ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT**
**Cal. Welfare Institutions Code §§ 15600, *et seq*.**

129.   Plaintiff here incorporates by reference the preceding paragraphs.

130.   Plaintiff was 94 years of age at the time of the incident and is considered an elder under Cal. Welf. and Inst. § 15610.30.

131.   Defendants, through the actions and conduct alleged herein, notably by immediately undertaking work and misrepresenting the necessity for their goods and services, utilized fraudulent and deceptive practices to induce Plaintiff into a financial transaction.

132.   Defendants, thereafter, failed to honor Plaintiff's statutory and contractual rights to cancel these agreements and continued to levy charges and attempts to collect debts in a manner contrary to Plaintiff's explicit communicated cancellation.

133.   Defendants' actions, as aforementioned, constitute financial abuse of an elder under Cal. Welf. and Inst. Code § 15610.30 by taking, secreting, appropriating,

or retaining real or personal property of an elder for a wrongful use, with intent to defraud, or by assisting in doing so.

134.   Defendants were aware of Plaintiff's advanced age and thus his protections under the elder abuse statutes.

135.   Defendants acted recklessly, oppressively, fraudulently, and maliciously in violation of their duties as prescribed by law, including the duty to deal fairly and act in good faith toward an elder such as Plaintiff.

136.   As a direct and foreseeable result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

137.   Moreover, Defendants' reprehensible conduct qualifies for punitive damages under Cal. Welf. and Inst. Code § 15657.

138.   Plaintiff is also entitled to reasonable attorney's fees and costs and damages under Cal. Welf. and Inst. Code § 15657.

## SIXTH CASUSE OF ACTION
## VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT [CCCRAA]
## Cal. Civ. Code § 1785.1, *et seq*.
## [Against GOODLEAP]

139.   Plaintiff here incorporates by reference the preceding paragraphs.

140.   The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

141.   In the regular course of its business operations, GOODLEAP routinely furnishes information to credit reporting agencies pertaining to transactions between GOODLEAP and GOODLEAP's consumers, thereby providing information to the credit reporting agencies regarding a consumer's credit worthiness, credit standing and credit capacity.

142.   Because GOODLEAP is a partnership, corporation, association, or other entity, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), GOODLEAP is and always was obligated to not furnish information on a

specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

143.   GOODLEAP should have determined that its reporting was inaccurate and/or misleading through review of GOODLEAP's own internal business records, account notes and communications, including the fact that Plaintiff had properly rescinded the contracts and is not liable for the debt.

144.   It is simply factually and legally inaccurate for GOODLEAP to report the alleged debt resulting from the rescinded home solicitation contracts (account number 230315****) as belonging to Plaintiff as the debt is not legally owed.

145.   However, despite this knowledge that the account was is not due and owing, GOODLEAP continues to report the Account inaccurately to Plaintiff's credit reports, which has dropped his credit score, upon information and belief, from 810 to 633 since December of 2023 when the debt began reporting as delinquent, when in fact iti is not owed.

146.   As a result of the willful, negligent, and/or reckless actions and inactions of GOODLEAP, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit (including refraining from using credit), damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

## SIXTH CASUSE OF ACTION
### VIOLATION OF THE CALIFORNIA PENAL CODE § 632
### [Against All Defendants]

147.   Plaintiff here incorporates by reference the preceding paragraphs.

148.   Cal. Penal Code section 632 prohibits the intentional recording of a confidential communication without the consent of all parties to the communication.

149.   Defendants violated Section 632 by intentionally using a recording device to record the confidential communications of Plaintiff without obtaining

Plaintiff's consent.

150.   Plaintiff had an objectively reasonable expectation that his communications with Defendants were confidential and were not being recorded. This expectation of privacy was heightened because the communications concerned highly sensitive personal and financial information.

151.   Further, Plaintiff desired the communications at issue to be confined to the parties physically present in the meetings, and such communications were not made in any circumstance in which Plaintiff would have reasonably expected that the communication may be overheard or recorded.

152.   Upon information and belief, at all relevant times, Defendants had a policy and practice of recording the confidential communications of Plaintiff (and other individuals) in real time through a hidden monitoring and/or recording device when coercing individuals into home solicitation contracts.

153.   Because Defendants did not disclose to Plaintiff that his confidential conversations were being intercepted, monitored, or recorded, Defendants did not obtain, and could not have obtained, the requisite consent of Plaintiff to authorize its interception, recording and/or monitoring of those communications.

154.   At all relevant times hereto, Defendants had and followed a policy and practice of using a recording system and/or recording device that enabled them to surreptitiously record confidential communications between Defendants and Plaintiff.

155.   At all relevant times hereto, Defendants intentionally and surreptitiously recorded a conversation with Plaintiff concerning confidential matters.

156.   Defendants failed to obtain consent of Plaintiff prior to recording Plaintiff.

157.   Defendants' conduct violated section 632(a) of the California Penal Code.

158.   Pursuant to California Penal Code § 637.2, Plaintiff has been injured by the violations of Cal. Penal Code § 632 and seeks damages for the greater of $5,000 or three times the amount of actual damages *for each violation*, as well as injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

- Actual damages in an amount to be determined at time of trial;

- Enter judgment against GOODLEAP for failing to make the disclosures required by TILA;

- An order granting rescission of the transaction and/ or any purported contracts with Defendants;

- An award of actual damages, statutory damages, costs and attorney's fees pursuant to 15 USC § 1640;

- For compensatory and economic damages according to proof;

- An order declaring that any work, materials, and installations performed by Defendants (including the R.O. system, water softener tankless water system, and re-piped waste lines) are the property of Plaintiff without any further obligation for Plaintiff to pay Defendants;

- For punitive damages as allowed by law and pursuant to Cal. Welf. and Inst. Code § 15657 and/or Civil Code § 3294;

- Attorneys' fees and costs pursuant to Cal. Welf. and Inst. Code § 15657;

- Damages pursuant to Cal. Welf. and Inst. Code § 15657;

- An order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices, as described in this Complaint; and,

- Restitution pursuant to Cal. Bus. Prof. Code § 17203;

- Public injunctive relief under the UCL;

- Statutory damages of $1,000 pursuant to 15 U.S.C. § 1692k and California Civil Code § 1788.17;

- Attorney's fees and costs pursuant to 15 U.S.C. § 1692k and California Civil Code § 1788.17; §1788.30;

- Statutory penalties pursuant to California Civil Code § 1788.30; and

- Actual damages, including court costs, loss of wages, and pain and suffering pursuant to Cal. Civ. Code § 1785.31(a);
- Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1785.31(a)(1); and Cal. Civ. Code § 1785.31(d);
- Punitive damages according to proof as to the CCCRAA, including an award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B)
- Equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);
- An order directing that GOODLEAP send to all persons and entities to whom it has reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report information;
- An order directing that GOODLEAP immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom it reports consumer credit information;
- An amount of $5,000 for each violation of Section 632(a) of the California Penal Code, pursuant to Cal. Pen. Code § 637.2(a);
- Injunctive relief to prevent the further occurrence of such illegal acts alleged herein pursuant to Cal. Pen. Code § 637.2(b);
- Treble damages pursuant to California Civil Code § 3345; and,
- For such other and further relief as the Court may deem proper.

### JURY DEMAND

Plaintiff is entitled to, and demands, a trial by jury as to his legal claims.

Dated: March 29, 2024                              Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: _/s/ David McGlothlin, Esq._
David McGlothlin, Esq.
Pamela E. Prescott, Esq.
ATTORNEY FOR PLAINTIFF

**[Additional Counsel for Plaintiff]**
**LAW OFFICE OF KYLE GURWELL**
Kyle Gurwell (289298)
kng@lawofficekg.com
7755 Center Ave., Suite 1100
Huntington Beach, CA 92647
Telephone: (562) 600-9989